W. H. Chatfield, Adm'r de bonis non, etc. of Isaac L. Clark, dec'd v. J. J. Faran, Adm'r, etc. of James H. Ewing, dec'd, et al.

1. An administraror *de bonis non* has, at common law, no right of action on the bond of his predecessor.

2. Such right of action authorized by the statutory enactment of April 7, a. d. 1854, in all cases where the powers of an executor or administrator, theretofore or thereafter appointed, have ceased by death, removal, resignation, etc., in no wise conflicts with the provisions of the constitution, and is in entire harmony with the conditions of an administration bond.

3. It is not a misjoinder, under the code, to join as defendants in the same action, the surviving co-obligors of a bond with the legal representative of a deceased obligor.

4. This court has no jurisdiction of an action founded on an administration bond: that jurisdiction rests with the court of common pleas.

Special Term.—This action was instituted by the administrator *de bonis non* of the estate of Isaac L. Clark, deceased, to recover from the estate of the original administrator, and the sureties on the original administration bond, a balance of moneys claimed to have been collected previous to the administrator's death, and still remaining unadministered.

The defendants demurred to the petition for causes:

1. That the plaintiff has no capacity or right to sue.

2. That there is a misjoinder of defendants.

3. That the court has no jurisdiction of the action.

*Collins & Herron*, for plaintiff.

*Tilden, Rairden & Curwen*, for defendants.

Spencer, J. Petition sets forth that in 1843, James H. Ewing was appointed administrator of the estate of Isaac L. Clark, deceased, and entered into bond, with Spader & Carey as his sureties in the sum of $8,000, for the faithful performance of his duties as such; that said Ewing, as such administrator, received assets belonging to said estate,

amounting to $4,750.79 in all, of which he only accounted for $3.978.84, leaving a balance in his hands unadministered, of $771.95, and interest since January 1, 1847; that said Ewing afterward died, and said Faran was appointed administrator on his estate; that on November 22, 1856, plaintiff was appointed administrator *de bonis non*, of the estate of said Clark, deceased, and has demanded from said Faran, as administrator aforesaid, the said balance of assets unadministered by said Ewing, which said Faran refuses to pay over; wherefore plaintiff claims judgment therefor against the sureties and said Faran, jointly.

To this petition defendants have demurred:

1. Because plaintiff has no capacity or right to sue.

2. Because of a misjoinder of defendants.

3. Because this court has no jurisdiction of the cause of action.

I. As to the right of plaintiff to sue.

At the time when this bond was executed, there was no provision of law authorizing an administrator *de bonis non* to bring an action on the bond of a deceased administrator, to recover unadministered assets which had come into his hands; and there was no such right at common law; 20 Ohio, 480, *Blizzard* v. *Filler*, *et al.* Because an administrator represents only the decedent himself, and is only authorized to administer upon such of his goods as have not been previously administered by some other representative of the estate. Whatever right, therefore, the plaintiff may have, is dependent upon subsequent legislation. That legislation took place in 1854, when it was enacted: "That in all cases where the powers of an executor or administrator heretofore or hereafter appointed under any law of this State, have ceased, by death, removal, resignation, or in any other manner, any succeeding administrator, or co-executor, or co-administrator may maintain an action on the bond of such executor or administrator whose powers have ceased, against any of the obligors thereof, or their legal representatives, for any breach of the conditions of said bond;" 52 O. L. 31.

The terms of this law clearly embrace the case before us, and are decisive of the plaintiff's right to sue, if the law can be constitutionally so applied. It is objected by the demurrants, that this law does not merely give the plaintiff a remedy to enforce a right previously existing, but that it creates a right and title in the plaintiff where none existed before, and is obnoxious to that provision of the constitution which declares that "the general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts."

Without deciding the important and difficult question, whether, as claimed by plaintiff's counsel, and as has been decided with regard to a similar clause of the constitution of a sister State, 1 Peck Tenn. 17, *Townsend* v. *Townsend,* the term *retroactive laws,* must be taken in connection with the other clause of the section, and read as though it were written, "retroactive laws impairing the validity of contracts," or whether it was intended to prevent retroactive legislation generally, so as to preclude the legislature, in any event, from cutting off an existing right, or vesting it in another person, it certainly can not be successfully maintained that either the spirit or the letter of such prohibition applies to a case like the present. The condition of the bond here is, that Ewing will faithfully perform his duties as such administrator; *i. e.,* such duties as may be devolved upon him by law. Among the duties thus declared are: "that he shall administer, according to law, all the moneys, goods, chattels, rights, and credits of the deceased, and the proceeds of all his real estate, that may be sold for the payment of his debts, which shall at any time come into his possession, or the possession of another for him, and upon the settlement of his accounts, shall pay any balance remaining in his hands to such persons as the court or law shall direct." The goods, moneys, and other property of the deceased, thus taken possession of, are to be administered according to law, or in other words, the property and estate is held by him to be disposed of to such uses as the law may direct; this is what is termed

administration. If called upon to render up the trust entirely, and he does so, he has properly administered the estate according to his obligation; and if he refuse, it would be a breach of his official duty. This is but a new appointment of the trust, or direction given to it not only perfectly consistent with the original obligation, but in direct pursuance of it. So if he dies, leaving the estate unadministered, it remains in the hands of his representatives, subject to the same duties and trusts. They can acquire no better right to it than he had while living, and the law which assumes to appoint a successor and clothe him with a right to take possession, divests the representative of no legal right, and as to him, is not retroactive, but prospective; while it confers not a past, but a present right only, upon the appointee. It seems to me, therefore, that the present law is nothing more than a new appointment of the trust, which the legislature had a right to make, and is in entire harmony with the condition of the bond, and in no sense obnoxious as a retroactive exercise of power.

II. The second ground of demurrer is, that the defendants are improperly joined as parties.

It is undoubtedly true that before the adoption of the code, a joint action at law could not be sustained against surviving co-obligors and the representatives of a deceased obligor, because there could not be a joint judgment and execution, there being no personal liability on the part of the representative; nor would equity interfere against the representatives until the survivors had been prosecuted, at law to insolvency. Because, otherwise, the remedy at law against the survivors was complete. But no such objection exists under the code to a joinder of parties as existed in former actions at law. It is now within the power of the court to render such judgment, whether joint or several, or both, against the parties, as the exigency of the case requires, and to enforce such judgment, by execution. The question which determines the propriety of a joinder of parties in any case is, whether they have a common or several interest

in the controversy, Code, §35, or whether the presence of either of them be necessary to a complete settlement of all the questions involved in the action. Now, undoubtedly, the administrator of Ewing has an interest in the controversy in this case, since the estate of Ewing must be ultimately liable to pay the judgment rendered, and his co-defendants are interested in having him brought in as a party, in order that their own rights may be vindicated.

III. The third ground of demurrer is, "the want of jurisdiction in the court over the subject of the action."

To my mind this objection to the action is fatal. The whole policy and scope of our administration laws is to keep the administration of estates within the county where administration is granted, and to require all remedies with regard thereto, to be applied for in the court granting such administration. The obvious reason for this is, that the bond stands in lieu of assets, and it may be necessary so to apportion a recovery upon it, as that each creditor, legatee, or distributee, may not obtain more than his appropriate share. Hence, in section 26 of the act for the settlement of estates, 1 Curwen, 713, it is provided that "an administrator appointed in the place of an executor or administrator who has resigned, been removed, or whose letters have been revoked, shall be entitled to the possession of all the personal effects, etc., and may maintain a suit against the former executor or administrator, and his sureties, on the administration bond, for the same, etc., in the manner prescribed in the seventh part of this act." Turning, then, to the seventh part of this act, we find it to be entitled, "of suits on, and other proceedings relating to the administration bond." Section 182 provides that creditors, who are entitled to the payment of their debts, after the same have been admitted, or ascertained by judgment, may cause the bond to be put in suit, etc. The next section provides that legatees and distributees, whose rights are ascertained, may also cause the bond to be put in suit.

The next section provides, that "when it shall appear to

the court, on the representation of any person interested in the estate of any deceased testator or intestate, that the executor or administrator has failed to perform his duty, in any other particular than those above specified, in the two preceding sections, the court may authorize any creditor, next of kin, legatee, administrator *de bonis non*, or other person aggrieved by such mal-administration, to bring a suit on the bond."

The next section provides "that such suit shall be brought in the court in which the bond is filed, either in the mode directed by the act entitled 'An act pointing out the manner in which suits may be prosecuted on the bonds of executors,' etc., 29 O. L. 267, or it may be prosecuted by bill in chancery," etc.

Section 189 relates to proceedings in chancery in such cases, and provides, that "instead of proceeding at law, etc., the creditor, widow, next of kin, legatee, or other person interested in the estate, may bring their said suit upon the chancery side of the court of common pleas, which issued the letters," etc.

Section 192 provides that in such case, the court, if it sees proper, "may finally adjust and settle the estate in whole or in part, according to the practice and rules of proceeding in courts of chancery in like cases."

These provisions are express, that suits *shall be* brought in the court in which the bond is filed; which, at the time of the passage of this act, was in the court of common pleas; and comparing section 185 with section 189, which latter, instead of using the phrase, "court in which the bond is filed," says, "court of common pleas which issued the letters," it is evident that the court of common pleas was intended in both cases. Had there been no change in the administration laws, taking probate jurisdiction from the common-pleas and conferring it upon courts of probate, there could have been no doubt that, under these general provisions, no suit could be brought upon an administration bond, except in the court granting such administration.

But, although by the act defining the jurisdiction of probate courts, the granting of administration, probate of wills, and settlement of estates, has been devolved upon the probate courts, so that now, the bond of an executor or administrator is filed in the probate court and not in the court of common pleas, yet it does not follow that the jurisdiction of the court of common pleas was intended thereby to be ousted, or rendered in any wise less exclusive. The letter of the law, " court of common pleas which issued the letters," or, " in which the bond is filed," can not be complied with in cases of administration granted, since the probate act was passed, though it may in those of administration granted before. But even in regard to the former class of cases, the spirit and object of the law demands that the suit be brought in the court of common pleas of the county in which the letters may have been granted and bond filed. It is agreed that no jurisdiction has been conferred upon the probate court in such cases; 4 Ohio St. 508, *McLaughlin* v. *McLaughlin*. Nor was the jurisdiction of the court of common pleas intended to be revoked; and it certainly was not intended to allow such bonds to be prosecuted anywhere within the State. The policy of the law was not changed, which required suits to be brought in the county where administration was granted; because, in that county the estate must still be settled up, and there must all the assets of the estate be gathered together for distribution. And the same policy which required the assets to be gathered in one county for distribution, required that they should be gathered, as far as possible, in the same court; a court, too, whose jurisdiction should be coextensive with the county, and, for the sake of uniformity, that court must be the court of common pleas. There is another consideration which strengthens greatly this view of the matter. By the probate act all of the jurisdiction of the common pleas in probate and testamentary matters, was not taken away and conferred upon the probate judge. There was a concurrent jurisdiction between them in the sale of lands on petition by executors

and administrators, for payment of debts, and in the completion of real contracts, on the petition of executors and administrators. There was appellate jurisdiction from the probate court to the court of common pleas in the matter of the probate of wills; see Prob. Act. §3, §24, 3 Curwen, 2041, 6; and now by the provisions of an act, passed in April last, 54 O. L. 202, entitled "An act to provide for the more speedy collection of claims of creditors, legatees, and distributees of executors, administrators, and guardians, and to define the jurisdiction of the court of common pleas and probate court in certain cases," concurrent jurisdiction is given to the court of common pleas with the probate court, to enforce the distribution of estates in certain cases, by petition filed therein in the name of any creditor or other party, interested in such estates, and to enforce such distribution by proceedings instituted therein, upon the bond of such executor or administrator. So far as all these matters are concerned, the jurisdiction of the common pleas is exclusive of every other court than the court of probate, except in cases of appeal to the district court. The provisions above referred to show the intimate connection between the court of common pleas and the probate courts, in the settlement of estates, and demonstrate the propriety of so construing the law as to continue in the common pleas court of the county where administration was granted, the exclusive jurisdiction of actions upon the bond to enforce the due administration of estates.

It is said, however, that the law of 1854, already quoted, which authorizes suit in cases like the present, does not limit or appoint the forum before which suit shall be brought, and therefore it may be brought anywhere, at the option of the party. But it will be observed, that this law does not profess to repeal, nor is it in any wise inconsistent with, any part of the act of 1840; both acts may well stand together in all things. The later act, therefore, which includes all the cases provided for in section 26 of the earlier law, presumes they will be prosecuted under the provisions of that law. And it

can not be supposed the legislature intended to create a distinction between cases like the present, and all others arising under the law, where the same policy applied alike to all.

My attention has also been called to section 566 of the code, as bearing upon the question under consideration. But to my mind it has no just application to it, except as changing the form in which the action must be brought. That section is as follows:

" When an officer, executor, or administrator, within this State, by misconduct or neglect of duty, forfeits his bond, or renders his sureties liable, any person injured thereby, or who is by law entitled to the benefit of the security, may bring an action thereon, in his own name, against the officer, executor, or administrator, and his sureties, to recover the amount to which he may be entitled by reason of the delinquency. The action may be instituted and proceeded in on a certified copy of the bond, which copy shall be furnished by the person holding the original thereof."

This section relates solely to the manner in which such actions shall be brought, not to the forum. It will be remembered that by section 180 of the administration law of 1840, it was provided that suits upon the bond should be prosecuted in the manner provided for by "An act pointing out the manner in which suits may be prosecuted on the bonds of executors," etc.; 29 O. L. 267. That act required suit to be brought in the name of the State of Ohio, the obligee of the bond, for the use of the party injured by its breach, on which judgment may be rendered for the whole penalty of the bond, with leave to issue execution for the amount due the injured party. Upon further breaches, a *scire facias* was issued upon the judgment, in favor of the injured party, and thus further execution obtained. But as it was a cardinal object with the code to require actions to be brought directly in the name of the party interested therein, the above named law was repealed, and section 566 of the code adopted, requiring suits upon such bonds to be brought at once in the name of the

party suing for the benefit thereof. Such, and no more, it seems to me, is the scope and purpose of this section.

In conclusion, I am of opinion that this court has not jurisdiction of the cause of action set forth in the plaintiff's petition, and the demurrer, therefore, to it, must be sustained.

Demurrer sustained and action dismissed.